Cochrane, J.:
<A serious and interesting question arises as to whether the cause of action, if any, for royalties under such a contract as the one in question belongs to the heirs at law of Mrs. Connors or to.her personal representatives. As the judgment must be reversed for other reasons it is unnecessary now to determine that question.
Plaintiffs’ further difficulty arises over the concluding sentence in the said contract as follows: Said Sophronia Connors to allow said Baeder, Adamson & Co. and Charles B. Adamson twenty tons of garnet free from royalty as compensation for making roads ' and bridges to main road also the cost &c of the - surveys and the expenses attached thereto.”. Plaintiffs’ position in regard to this provision is that twenty tons of garnet have therein been allowed defendants which is to include roads, bridges and surveys and expenses attached thereto and that the contract is, therefore, conclusive against the defendants’ claim to compensation for such suiv veys, I am constrained to disagree with plaintiffs. The contract, in my opinion, is on its face ambiguous. It may be read with the meaning which plaintiffs seek to attach thereto and it may also be understood as meaning that the twenty tons of garnet were to cover only the roads and bridges and that in addition to such allowance Mrs. Connors was to allow for' the surveys and expenses attached thereto. It seems to me that the latter construction can be urged with even more plausibility than the former. Should we omit the words “also the cost &c of the” there would be no reasonable doubt that plaintiffs’ interpretation would be correct. By well-understood rules of construction, however, we must give the contract a meaning if possible which will make every part thereof serviceable and it may very well be that the .application of such rule requires a special significance to be attached to the words above quoted and if that be so the defendants’ interpretation must prevail. In any event there is such a doubt and ambiguity appearing from the instrument itself as to make applicable the rule that parol evidence may be received, not for the purpose of changing the meaning of the contract,, but for the purpose of explaining the ambiguity and showing what the parties actually intended. (Thomas v. Scutt, 127 N. Y. 141; Morison v. American Telephone & Telegraph Co., 126 App. Div. 575; Green Island Water Supply Co. v. Trojan Laundry Co., *321 Id. 584.) It was established at the trial by- oral evidence that Mrs. Connors on the day when she made the contract and thereafter, litigation as to her title to the property being then imminent or pending, told the representatives of the defendants to have the surveys made at her expense and deduct the cost thereof from her interest in the garnet. She also knew then that such expense would probably far exceed her royalties from twenty tons of garnet which would amount to only $100. It is quite clear that she did not when making her contract intend to limit her entire liability for surveys, bridges, roads, etc., to this latter amount. The trial justice disregarded this oral evidence, evidently believing that the .written contract was conclusive. In this I think he was mistaken. Had this evidence been considered it would have explained the ambiguity in the instrument and made clear the intention of the parties as therein carelessly and inartifically expressed.
This oral evidence should also have been considered on another theory. The contract did' not require defendants to defend the title of Mrs. Connors or establish her right to the property. Neither did it require them to mine any ore therefrom, but it simply permitted them to do so at such times and in such quantities as they desired. It was to the interest of Mrs. Connors to have ore mined so that she might receive royalties, but the defendants were at liberty to cease operations or to refrain from operations at their pleasure. They could not well proceed in the face of the litigation in which her .title was assailed and were not obliged to do so. An agreement, therefore, by her to defend the litigation with a view to having ore mined by the defendants which they were not by the original contract bound to mine was'a valid agreement based on a good consylération. Again she was a party defendant to the Eldridge litigation in which her title was attacked and in which as it also appears it was claimed that she had executed to the plaintiff in that litigation a contract similar to the one in question and prior thereto. She had a direct and personal pecuniary interest in that litigation. A judgment adverse to her therein would have nullified her contract with defendants. That litigation was being defended by these defendants and she essentially shared in the fruits of their success. It was in reference to that litigation that she authorized *322 these defendants to make the surveys and reimburse themselves from her royalties. There was ample consideration for a new and independent agreement on her part to pay the expenses of such sur veys even though such expenses were covered in the written contract by the twenty tons of garnet as therein expressed.
The judgment must be reversed on the law and facts and a new trial granted, with costs to the appellants to abide the event.
All concurred, except Smith, P. J., not voting.
Judgment reversed on law and facts and new trial granted, with costs to appellants to abide event.